UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 19-20473-CIV-MORENO**

UNITED STATES OF AMERICA on behalf of
SALT ENERGY, LLC, a Florida Limited
Liability Company,

        Plaintiff,

vs.

LEXON INSURANCE COMPANY n/k/a
SOMPO INTERNATIONAL INSURANCE,

        Defendant.

_____/

## ORDER GRANTING MOTION TO TRANSFER CASE TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer, filed on **March 7, 2019**. The Court has considered the motion, the response in opposition, the reply, the pertinent portions of the record, and is otherwise fully advised in the premises. Based on the reasoning below, and pursuant to 28 U.S.C. § 1406(a),[1] it is **ADJUDGED** that the motion to transfer is GRANTED. Accordingly, the instant action is transferred to the United States District Court for the Eastern District of Virginia.

### I. BACKGROUND

On February 5, 2019, Salt Energy, LLC filed a Miller Act complaint pursuant to 40 U.S.C.

---

[1] Lexon Insurance writes that it requests transfer pursuant to 28 U.S.C. § 1404(a), which "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). However, because it is clear to this Court that this case is filed in the wrong venue, and because Lexon Insurance essentially makes that same argument throughout its motion, the Court construes the motion as requesting relief under 28 U.S.C. § 1406(a). "Section 1404 operates where there are two (or more) forums where a suit could be brought and where it could proceed. . . . Its purpose is to determine the most convenient forum from among two or more possibly correct ones. . . . By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there." *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967).

§ 3133(b) against Lexon Insurance Company for failure to repay certain sums owed under a payment bond.  Salt Energy, whose principal place of business is in Florida, alleged that on September 29, 2016, Montage, Inc. and the United States entered into a prime contract in which Montage promised to design and construct a solar powered system for the United States Embassy parking garage in Ouagadougou, Burkina Faso.  According to the prime contract, Montage was to, among other obligations, "provide design and construction services for a new parking canopy structure completely covering all parking spaces within the staff parking area [of the United States Embassy], as well as a photovoltaic (PV) renewable power generation system integrated into the canopy."  Montage's principal place of business is in Washington, D.C.

Consistent with federal law, before executing the prime contract, Montage furnished the United States with "[a] payment bond with a surety satisfactory . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person."  40 U.S.C. § 3131(b)(2).  The amount of the bond was $2,295,000, "[t]he amount. . . equal [to] the total amount payable by the terms of the contract."  *Id.*  The bond listed Lexon Insurance as the surety, which "b[ound] itself, jointly and severally with the Principal [Montage], for the payment of the sum."  Lexon Insurance's principal place of business is in Tennessee.

After executing the payment bond and prime contract, Montage entered into a subcontract agreement with Salt Energy on December 20, 2016.  Salt Energy, as subcontractor, promised to furnish and install the PV renewable power generation system and parking canopy structure, as well as "provide material, tools, supervision and labor" for the project.  According to the complaint, Salt Energy completed the project on October 10, 2018, but is still owed approximately $515,800.  Now, Salt Energy is suing for those sums and attorney's fees and costs.  Salt Energy notes that it sent a letter to Lexon Insurance notifying the company of the amount due, but to date,

neither Montage nor Lexon Insurance have paid it.

In response to the complaint, Lexon Insurance filed a motion to dismiss, or in the alternative, transfer. Its main argument is that Salt Energy filed suit in the wrong district, failing to establish a sufficient nexus between the prime contract at issue and this Court. Under the relevant venue provision of the Miller Act, the plaintiff's residence, for venue purposes, is irrelevant. Instead, what matters is the location of the government project itself, and, if that project occurs abroad, either the location of the defendant's residence or wherever a substantial part of the events or omissions giving rise to the claim occurred. For the latter reason, Lexon Insurance seeks transfer to the United States District Court for the Eastern District of Virginia.

The Court now reviews Lexon Insurance's motion to dismiss or transfer venue.

## II.  STANDARD GOVERNING A MOTION TO DISMISS OR TRANSFER VENUE

Lexon Insurance brings forth its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), and, in the alternative, requests transfer pursuant to 28 U.S.C. § 1406(a). "On a motion to dismiss based on improper venue [under Rule 12(b)(3)], the plaintiff has the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004); *see also United States ex rel. Crux Subsurface, Inc. v. TK Constr. US, LLC*, No. 15-cv-01777-LTB, 2015 WL 8759330, at *2 (D. Colo. Dec. 15, 2015) (applying the standard with respect to a Miller Act complaint). When evaluating a motion to dismiss, "[t]he court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Rainbow Holdings*, 315 F. Supp. 2d at 1268. "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.*

However, if the court determines that venue is improper, it "shall dismiss, or if it be in the

interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In applying section 1406(a), "the decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion." *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982). "Generally, the interests of justice require transferring a case to the appropriate judicial district rather than dismissing it." *Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187, 194 (D.D.C. 2007); *see also Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1059-60 (N.D. Ill. 2002) ("Transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is time consuming and may be justice-defeating." (internal quotation marks omitted)); *Yurman Designs, Inc. v. A.R. Morris Jewelers, LLC*, 60 F. Supp. 2d 241, 246 (S.D.N.Y. 1999) ("Dismissal is a severe penalty, and courts will ordinarily transfer a case when proper venue can be determined." (internal quotation marks omitted)).

## III. ANALYSIS

### A. Under the Miller Act, Venue Is Typically Proper in the Final Location of the Government Project Site as Identified by the Prime Contract

Upon review of the filings, the Court ultimately agrees that Salt Energy has filed suit in the wrong district, and that the case should be transferred to the United States District Court for the Eastern District of Virginia. By way of background, "the Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project." *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 121-22 (1974). Under the statute, such subcontractors and suppliers sue on the payment bond to recover amounts unpaid by general contractors. *See* 40 U.S.C. § 3133(b)(1). The general contractors furnish the bond to the United States before executing the prime contract to ensure that those working on the project will receive payment. *See* 40 U.S.C. § 3131(b). The Miller Act dictates

the location of where a subcontractor or supplier can enforce the bond, stating that venue is proper wherever the prime contract is to be "performed and executed." 40 U.S.C § 3133(b)(3)(B). The relevant language of the provision reads: "Venue—A civil action brought under this subsection must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C § 3133(b)(3).

At issue is that venue provision of the Miller Act. A majority of courts have interpreted the provision to mean that a contract is "performed and executed" at the location of the government project, that is, where the final installation of the contracted public work takes place. *See, e.g.*, *United States ex rel. Norshield Corp. v. E.C. Scarborough*, 620 F. Supp. 2d 1292, 1296 (M.D. Ala. 2009) (holding that "this court interprets the Miller Act venue provision as stating that venue is proper in any district court in the United States where the prime contract for the Government project is performed and executed; namely, the location of the Government project site"); *United States ex rel. Straightline Corp. v. CNA Sur.*, 411 F. Supp. 2d 584, 585 (W.D. Pa. 2006) (holding that "the site of the government project for which . . . services were subcontracted" was the site of venue under the Miller Act—not the district in which substantial performance took place).

Salt Energy disagrees with the cited cases, arguing that venue is proper wherever substantial performance of the prime or subcontract agreement took place, regardless of where the government project lies. For support, it cites to *United States ex rel. Expedia, Inc. v. Alex Enterprises, Inc.*, 734 F. Supp. 972 (M.D. Fla. 1990), a case which arguably held exactly that.[2] *Id.* at 974. However, *Expedia* adopts a minority view of the venue provision which this Court rejects,

---

[2] *But cf. Straightline*, 411 F. Supp. 2d at 586 (construing *Expedia* to actually hold that venue lay in Florida because that was where "the final installation for delivery of goods that were the subject of the contract" took place). The Court recognizes that in *Expedia*, the contract at issue, which the court analyzed to determine venue under the venue provision of the Miller Act, was the subcontract agreement—not prime contract. *Expedia*, 734 F. Supp. at 973-74. However, that distinction is of no moment in this case, as both the prime contract and subcontract agreement mandate final installation of the solar powered system and parking canopy structure in Ouagadougou, Burkina Faso.

and the Eleventh Circuit Court of Appeals is unlikely to adopt. *See Norshield*, 620 F. Supp. 2d at 1296, n.4. As the Former Fifth Circuit Court of Appeals held,[3] while Congress originally enacted the Miller Act for the benefit of subcontractors and suppliers, the venue provision was primarily enacted for the benefit of defendants. *See U.S. Fid. & Guar. Co. v. Hendry Corp.*, 391 F.2d 13, 19 (5th Cir. 1968) (explaining that Congress included a "single forum" limitation in the venue provision of the Miller Act because "the limitation was intended to meet the objections of the surety companies [i.e., defendants], which had expressed the fear that if the single suit provision [of the previous overridden act] were eliminated, they would be exposed to a multiplicity of suits, and could possibly be found liable for an amount in excess of the penal sum of the bond.").

Accordingly, in light of the above, the Court declines to accept Salt Energy's argument that "the obligations of the contract independent of jobsite activities" dictate the selection of venue under the venue provision of the Miller Act. Instead, as Lexon Insurance argues, and as the venue provision states, the final site of the government project is dispositive of the matter. *See Norshield*, 620 F. Supp. 2d at 1296 ("Based on binding authority requiring that the court construe the venue provision of the Miller Act in favor of the Defendants . . . this court interprets the Miller Act venue provision as stating that venue is proper in any district court in the United States where the prime contract for the Government project is performed and executed; namely, the location of the Government project site."); *see also United States ex rel. Harvey Gulf Int'l Marine, Inc. v. Maryland Cas. Co.*, 573 F.2d 245, 247-48 (5th Cir. 1978) (reversing and remanding the Miller Act case in part given that "the West Atchafalaya contract was to be performed in the Western District of Louisiana, not the Eastern District where suit was filed.").

---

[3] Decisions of the Former Fifth released prior to the close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207-09 (11th Cir. 1981).

**B.** **Because the Government Project at Issue Is Located Abroad, Venue Is Proper Pursuant to the General Venue Statute, 28 U.S.C. § 1391**

In adopting the majority view of the venue provision of the Miller Act, a significant wrinkle arises in this case. Notably, the government project is located abroad in Ouagadougou, Burkina Faso, and thus, the venue provision of the Miller Act is seemingly inapplicable. Some "circuits have determined that when a Government project is located outside of the United States, recovery under the Miller Act is not barred on that basis, and that venue is proper where the defendant's principal place of business is located." *Norshield*, 620 F. Supp. 2d at 1296.

Other courts, however, write that the analysis is not so straightforward and instead hold that the general venue statute, 28 U.S.C. § 1391, applies, such that venue may be proper wherever any defendant resides or wherever a substantial part of the events or omissions giving rise to the claim occurred. *See United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co.*, 297 F.2d 665, 669 (2d Cir. 1962) (explaining that "[w]ith jurisdiction based on 28 U.S.C. § 1352, the general venue statute (28 U.S.C. § 1391) would be applicable"); *see also United States ex rel. Imco Gen. Constr., Inc. v. Ins. Co. of Pa.*, No. C14-0752RSL, 2014 WL 4364854, at *1 (W.D. Wash. Sept. 3, 2014) ("Arbitrarily limiting venue to defendant's principal place of business would, far from furthering that goal, make it even harder for local craftsman to recover for unpaid work. The Court declines to adopt the choice of venue analysis in *Norshield* and instead follows the general venue provisions of 28 U.S.C. § 1391 as the Second Circuit did in *Bryant Electric*, 297 F.2d at 669).

Upon review of these cases, the Court agrees with the latter which hold that the general venue statute applies whenever the venue provision of the Miller Act does not. The general venue statute, by its very terms, mandates application. It states that "[e]xcept as otherwise provided by law—(1) this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). Since the venue provision of the Miller Act is

inapplicable, this Court holds that selection of venue turns on an analysis of section 1391.

Allegedly proceeding under this framework, Lexon Insurance requests transfer to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a).  That statute enables a court to transfer a case, filed initially in the wrong district, to a court in which the case "could have been brought." *Id.*  And, under 28 U.S.C. § 1391(b)(2), Lexon Insurance argues this case could have been brought in the Eastern District of Virginia because that is "where the contract was executed by the Government, where written contract deliverables were to be submitted, and where the awarding Federal agency office is located."[4]  Salt Energy, also allegedly operating under the same framework, argues that this district in Florida is appropriate because it performed a substantial part of the subcontract agreement here, including executing the subcontract, creating drawings, shipping materials like solar panels, electrical wire, and specialized tools, and "plan preparation, solar energy logistics, solar energy design, preparation of change order requests, invoices."

Analyzing 28 U.S.C. § 1391(b)(2), the Court finds that it would be in the interest of justice to transfer the case to the Eastern District of Virginia.  A substantial part of the events giving rise to the claim occurred there, including the fact that that is where the prime contract was issued, executed, and administered by the United States Department of State, and where, pursuant to the prime contract, "exceptionally large invoices" were sent.  *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (location of events "giving rise" to a breach of contract claim under section 1391(b)(2) include, among other things, where the contract was negotiated and signed and where it was breached).  In making this determination, the Court notes that many of the activities Salt Energy performed in this district were in relation to the subcontract agreement, not prime contract, and, in any event, the alleged activities conducted were essentially ministerial

---

[4] For reasons unexplained, Lexon Insurance does not seek transfer to its principal place of business (Tennessee).

and administrative tasks, like billing, making phone calls, and other coordinating activities, which do not rise to the level of substantial performance. Furthermore, the record evidence submitted by Lexon Insurance, including affidavits and warehouse receipts, demonstrate that the designs and drawings Salt Energy alleges it made were actually made, or at least made in part, by other companies located outside of Florida, and that the materials Salt Energy claims it shipped from this district were actually shipped from other locations across the United States.

## IV. CONCLUSION

In sum, Lexon Insurance's motion to transfer is hereby GRANTED. Since the Miller Act's venue provision is inapplicable in this case, as the relevant government project took place abroad, the Court turns to the general venue statute. Under an analysis of section 1391, Salt Energy could have filed suit in the United States District Court for the Eastern District of Virginia, where a substantial part of the events giving rise to the claim at issue took place.

Accordingly, in the interest of justice, the Clerk of Court shall transfer this case in its entirety to the United States District Court for the Eastern District of Virginia.

DONE AND ORDERED in Chambers at Miami, Florida, this _14_ of August 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record